UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re: UFP Holding I, LLC,

                          Debtor.

--------------------------------------------------------x

**FOR PUBLICATION**

Chapter 11

Case No.: 25-11526 (JPM)

*APPEARANCES:*

**WILLIAMS LLP**
*Attorneys for Debtor UFP Holding I, LLC*
420 Lexington Avenue, Suite 875
New York, NY 10170
By:    T. Edward Williams

**UNITED STATES TRUSTEE**
*Office of the United States Trustee—Region 2*
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004
By:    Mark Bruh

**OLSHAN FROME WOLOSKY LLP**
*Attorneys for Providence Lending Fund, LP*
1325 Avenue of the Americas
New York, NY 10019
By:    Adam H. Friedman
           Jonathan T. Koevary
           Dean M. Oswald

## <u>Memorandum Opinion And Order</u>

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.   <u>INTRODUCTION</u>

Before the Court is the *Memorandum of Law in Support of the United States Trustee's*

*Motion to Dismiss this Chapter 11 Case Under 11 U.S.C. § 1112(b) or, Alternatively, to Convert*

*this Case to a Case under Chapter 7* (the "**Motion**") filed by the United States Trustee

("**Movant**") on August 15, 2025.  [Dkt. No. 25].[1]  The Motion seeks to dismiss the Chapter 11

case of Debtor UFP Holding I, LLC's ("**Debtor**") pursuant to Section 1112(b) of the Bankruptcy

Code.  On August 26, 2025, Providence Lending Fund LP ("**Providence**") filed the *Joinder of*

*Providence Lending Fund, LP to United States Trustee's Motion to Dismiss this Chapter 11 Case*

*Under 11 U.S.C. § 1112(b) or, Alternatively, to Covert this Case to a Case Under Chapter 7* (the

"**Providence Joinder**").  [Dkt. No. 29].  Debtor then filed *Debtor's Response in Opposition to*

*the Trustee's Motion in Dismiss* (the "**Opposition**") [Dkt. No. 39] on September 3, 2025, and the

*Affidavit of Steven Winegar* (the "**Winegar Affidavit**") on September 4, 2025.  [Dkt. No. 40].

On September 5, 2025, Providence filed *Providence Lending Fund LP's Reply to the*

*Debtor's Response in Opposition to the Trustee's Motion to Dismiss* ("**Providence's Reply**").

[Dkt. No. 41].

Shortly thereafter, Debtor filed the *Response in Opposition to Providence's Lending Fund*

*LP's Joinder in the Trustee's Motion to Dismiss* (the "**Opposition to Joinder**") on September 8,

2025.  [Dkt. No. 42].

On September 19, 2025, Debtor filed its *Reply in Support of Opposition to the Trustee's*

*and Providence's Motion to Dismiss* (the "**Debtor's Sur-Reply**").  [Dkt. No. 47].

Both Movant and Providence subsequently filed additional briefs.  Movant filed the

*Supplemental Statement in Support of the United States Trustee's Motion to Dismiss this Chapter*

*11 Case or, in the Alternative, to Convert this Chapter 11 Case to a Case under Chapter 7*

("**Movant's Reply**") on September 25, 2025.  [Dkt. No. 49].  Providence filed *Providence*

*Lending Fund LP's Reply to the Debtor's Sur-Reply in Opposition to the Trustee's Motion to*

---

[1] References to "Rule __" are to the Federal Rules of Civil Procedure.  References to "Bankruptcy Rule __" are to
the Federal Rules of Bankruptcy Procedure.  References to "Local Rule" are to the Local Bankruptcy Rules for the
Southern District of New York. References to "Bankruptcy Code" are to Title 11 of the U.S. Code (11 U.S.C).

*Dismiss* ("**Providence's Sur-Reply**") on September 26, 2025. [Dkt. No. 50]. For the reasons set forth below, the Motion is **GRANTED**, and Debtor's Chapter 11 bankruptcy case is dismissed.

## II. PROCEDURAL HISTORY AND BACKGROUND

Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on July 9, 2025. [Dkt. No. 1]. That same day, the Court entered a deficiency notice (the "**Deficiency List**") on the docket alerting Debtor to submit certain forms that had been due at the time of filing.[2] [Docket]. The docket reflects that the missing incomplete filings were to be submitted by July 23, 2025 (the "**Deficiency List Deadline**"). Further, on July 9, 2025, Movant sent an email to Debtor scheduling the Initial Debtor Interview (the "**IDI**") for July 30, 2025, and requested that certain documents and forms (the "**IDI Documents**") be submitted to Movant at least five days in advance.[3]

On July 15, 2025, Debtor filed the *Emergency Motion for Sanctions for the Violation of the Automatic Stay* (the "**Emergency Motion for Sanctions**") alleging that Providence had violated the automatic stay by conducting a non-judicial foreclosure on July 9, 2025, on certain property in Idaho. [Dkt. No. 7]. Providence responded later that day and filed the *Emergency Clarification Request/Request for Adjournment* (the "**Emergency Clarification Request**") [Dkt. No. 9], explaining that it had completed "its foreclosure on property belonging to its borrower, non-debtor, Little Rock Land Co., LLC" by conducting a "trustee's sale of the property pursuant to a nonjudicial foreclosure of Providence's deed of trust." [Emergency Clarification Request, ¶ 2]. A status conference was held on July 17, 2025, regarding the Emergency Motion for Sanctions and

---

[2] The list of initial deficiencies included: Schedules A-H; Summary of Assets and Liabilities, Statement of Financial Affairs; Attorney Disclosure Statement; List of the 20 Largest Unsecured Creditors; Declaration of Schedules; List of All Creditors Required on the Case Docket; List of Equity Security Holders; Resolution or Other Statement Authorizing Filing Pursuant to LR 1074-1; Local Rule 1007-2 Affidavit; and Corporate Ownership Statement.
[3] The IDI meeting was rescheduled to August 6, 2025. [Motion, p. 3].

the Emergency Clarification Request, and a schedule was set for briefing and hearings.  [Dkt. No. 27, p. 15].  The parties were also ordered to confer on deposition dates.

The parties were not able to agree on deposition scheduling and Providence filed its *Request for an Informal Discovery Conference* on July 27, 2025, also seeking sanctions against Debtor.  [Dkt. No. 15].  Debtor responded on July 30, 2025, filing a *Response in Opposition to ECF Doc. No. 15* denying that there was any basis for sanctions.  [Dkt. No. 17].  A hearing was held on July 31, 2025.  [Dkt. No. 28].  At the hearing, Movant alerted the Court to Debtor's "skeletal petition" filing and noted for the record Debtor's Deficiency List and incomplete forms.  [Dkt. No. 28, p. 27].  The Court adjourned the discovery deadline to August 20, 2025, and requested a joint status letter be submitted by August 26, 2025.  Approximately two weeks after the July 31, 2025 hearing, Movant filed the Motion.

Debtor filed the *Second Discovery Status Update/Request for Judicial Intervention* on August 6, 2025 (the "**Discovery Extension Request**").  [Dkt. No. 21].  The Court granted the Discovery Extension Request and extended the discovery deadline to August 25, 2025, and the joint status letter submission to August 27, 2025.  [Dkt. No. 22].  On August 26, 2025, Providence filed the *Joint Status Letter Concerning the Sanctions Motion* and informed the Court of the depositions that had taken place.  [Dkt. No. 30].[4]

On August 27, 2025, Debtor filed various documents with the Court, purportedly to cure certain outstanding items on the Deficiency List.[5]  To date, Debtor still has not filed an Attorney

---

[4] Providence conducted depositions of Steven Winegar and Mohammad Howard.  Debtor conducted depositions of Nathan Dorius and Christopher Huffman.  [Dkt. No. 30].

[5] On August 27, 2025, Debtor filed the *Summary of Assets and Liabilities Schedules for Non-Individuals* [Dkt. No. 31]; *Chapter 11 or Chapter 9 Cases Non-Individual: List of Creditors Who Have 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)* [Dkt. No. 32]; *Schedule A/B* [Dkt. No. 33]; *Schedule D* [Dkt. No. 34], *Schedule E/F* [Dkt. No. 35]; *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* [Dkt. No. 36]; *Declaration Under Penalty of Perjury for Non-Individual Debtors* [Dkt. No. 37]; and the *Verification of Creditor Matrix* [Dkt. No. 38].

Disclosure Statement or Local Rule 1007-2 Affidavit (the "**1007 Affidavit**").  [Movant's Reply, p. 4].  In addition, counsel for Debtor has still not filed a retention application and Debtor has not filed proof of insurance as is required by the Bankruptcy Code.  [Movant's Reply, p. 3].

On September 3, 2025, the Court held a hearing regarding the Emergency Motion for Sanctions.  At the hearing, Movant again reminded Debtor that there were "numerous deficiencies" in the case, including the missing 1007 Affidavit, a retention application for counsel, and the lack of disclosure regarding compensation to counsel.  [Dkt. No. 54, p. 10].  On the record Debtor stated that "all of those items are now going to be uploaded."  [*Id*., p. 12].

The Court held a hearing in connection with the Motion on September 9, 2025.  At the hearing, the Court adjourned the Motion *sine die*, and the Parties agreed that the 341 meeting of creditors (the "341 Meeting") would be held on September 15, 2025.[6]  [Dkt. No. 51, p. 38].  On September 15, 2025, Movant conducted the 341 Meeting but due to the "missing documents and/or information," the 341 Meeting was continued to October 30, 2025.  [Movant's Reply, p. 2].  The 341 Meeting was continued a second time to November 24, 2025, and a third time to January 8, 2026.  [Docket].

Movant had also stated at the hearing on September 9, 2025, that a reply brief would be filed after the 341 Meeting was held.  [Dkt. No. 51, p. 38].  However, once the 341 Meeting was continued, Movant filed Movant's Reply on September 25, 2025.  [Dkt. No. 49].  Providence filed Providence's Sur-Reply on September 26, 2025.  [Dkt. No. 50].

---

[6] The 341 Meeting was originally scheduled for August 18, 2025.  [Dkt. No. 8].  In the Motion, Movant explained that the U.S. Trustee's Office had been "unable to conduct a meaningful meeting of creditors under section 341 of the Bankruptcy Code to question the Debtor about its financial conditions and affairs."  [Motion, p. 7].

III.    **LEGAL STANDARD**

Section 1112(b) of the Bankruptcy Code provides:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a cause under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines … appointment … of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(4).

In turn, the Bankruptcy Code provides a list of sixteen factors that constitute "cause" for conversion or dismissal.  11 U.S.C. § 1112(b)(4).  This includes, among others:

> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> …
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> …
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any)… .

*Id*.  Further, courts are free to consider other factors, as the list in Section 1112(b)(4) is non-exhaustive.  *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) (citing H. Rep. No. 95-595, 95th Cong., 1st Sess. at 405-6, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6363-64); *see also In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010). Once a movant establishes that "cause" exists, the "burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of the estate."  *In re Halal 4 U LLC*, No. 07-15216-MG, 2010 WL 3810860, at *2-3 (Bankr. S.D.N.Y. Sept. 24, 2010).

## IV.    LEGAL ANALYSIS

### A. CAUSE FOR DISMISSAL OR CONVERSION IS ESTABLISHED UNDER MULTIPLE SUBSECTIONS OF SECTION 1112(b)

First, the Court will address whether the Movant has shown adequate cause for dismissal or conversion under Section 1112(b) of the Bankruptcy Code.

i.    Section 1112(b)(4)(C)

Under 11 U.S.C. § 1112(b)(4)(C), the "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is cause for conversion or dismissal of a bankruptcy proceeding. 11 U.S.C. § 1112(b)(4)(C).  Courts have considered the failure to maintain insurance under Section 1112(b)(4)(C) "cause" for conversion or dismissal, both as a stand-alone factor and as a contributing factor.[7]  *Gilroy v. Ameriquest Mortgage Co., et al.*, 2008 WL 4531982, 2008 Bankr. LEXIS 3968, (1st Cir. BAP 2008) (failure to maintain property and liability insurance for five condominiums alone constitutes cause for dismissal); *In re Pure Repair and Trucking LLC*, 658 B.R. 895 (Bankr. S.D. Ohio 2004) (finding that cause existed based solely on debtor's failure to maintain appropriate liability insurance); *In re Van Eck*, 425 B.R. 54, 60-61 (Bankr. D. Conn 2010) (finding that cause existed, in part because debtor failed to show that there was insurance on residential property he owned); *Derivium Capital LLC v. U.S. Trustee*, No. 5 Civ. 10845, 2006 WL 1317021, *4, 2006 U.S. Dist. LEXIS 31427, *11 (S.D.N.Y. 2006) (affirming bankruptcy court's conversion of chapter 11 case partially because debtor lacked proper insurance coverage).

Debtor lists its assets and liabilities as $48,831,025.00 and $23,515,817.18, respectively. [Dkt. No. 31].  Further, Debtor states that the assets it seeks to reorganize in the Chapter 11 include

---

[7] Conversion or dismissal is warranted upon the finding of even one of the grounds for cause under Section 1112(b). *Pure Repair and Trucking LLC*, 658 B.R. at 906; *Cal Palms Addiction Recovery Campus, Inc. v. Vara (In re Cal. Palms Addiction Recovery Campus, Inc.)*, 87 F.4th 734, 740 (6th Cir. 2023); In re *Creekside Senior Apts. L.P.*, 489 B.R. 51, 60 (citing *Reagan v. Wetzel* (*In re Reagan*), 403 B.R. 614, 621 (B.A.P. 8th Cir. 2009)).

"241 townhomes, 39 buildings, and 20 clubhouses." [Debtor's Sur-Reply, p. 1]. As Movant points out, "without insurance, the Debtor's estate faces serious potential legal liabilities, risk of loss and litigation, and harm to the public." [Movant's Reply, p. 4]. Based on these facts, the Court agrees with Movant that a lack of appropriate insurance poses a significant risk to the estate.

Movant first alerted Debtor to the missing proof of insurance on July 9, 2025, in an email requesting documents for the IDI. [Motion, p. 3]. On August 12, 2025, Movant received certain documents that had been requested for the IDI, including certain insurance papers. [*Id.*, p. 4]. Movant noted, however, that the insurance documents that "purport[ed] to be for the Debtor" were "in the name of Sweet Water Construction LLC." [*Id.*]. Thus, the "purported insurance documents" submitted by Debtor "are for an entity that is not the Debtor." [*Id.*, p. 8]. Despite being made aware of Movant's concerns in the Motion, Debtor has not submitted any updated insurance information. Debtor only briefly addressed the issue of valid insurance in the Opposition, stating that it had "supplied the relevant insurance information to the Trustee." [Opposition, p. 1]. The Court disagrees with that assertion, and finds that the failure to obtain or maintain appropriate insurance constitutes "cause" for dismissal under the facts and circumstances of this case.

    ii.   <u>Section 1112(b)(4)(F)</u>

Section 1112(b)(4)(F) provides that the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" establishes "cause" for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(F). Under Local Rule 1007-2, a debtor in a Chapter 11 case must file an affidavit setting forth, inter alia:

- The nature of debtor's business and a statement of the circumstances leading up to the bankruptcy filing;

- Information regarding the largest secured and unsecured claims, summary of debtor's assets and liabilities, property in debtor's possession and present status of pending or threatened legal actions;

- The names of individuals who comprise the debtor's existing senior management;

- If debtor intends to continue to operate its business, the affidavit must state: weekly payroll to employees, amounts proposed to be paid for services, and an estimate of cash receipts for the thirty day period following the filing of the Chapter 11 petition.

Local Bankruptcy Rule 1007-2.

Debtor was informed on multiple occasions that the 1007 Affidavit was required by the Local Rules and that it had not been submitted. First, Debtor was alerted by notice of the Court through the Deficiency List uploaded to the Docket the day the bankruptcy was filed, July 9, 2025. The docket entry listed a July 23, 2025, cure date for the missing 1007 Affidavit. Second, Movant brought up the missing 1007 Affidavit at a hearing on July 31, 2025. [Dkt. No. 28, p. 27]. Third, Debtor was again alerted to the missing 1007 Affidavit by Movant's Motion. [Motion, p. 2]. Debtor cured certain of the deficiencies mentioned in the Movant's Motion, but still did not upload a 1007 Affidavit. Fourth, Movant again alerted Debtor and the Court to the missing 1007 Affidavit on the record during the hearing held on September 3, 2025. [Dkt. No. 54, p. 10]. Finally, Debtor was reminded of the missing 1007 Affidavit in Movant's Reply filed on September 29, 2025. [Movant's Reply, p. 4].

Debtor has never asked the Court or Movant for a waiver of this requirement under the Local Rules. Despite months of notice and multiple opportunities to comply with the Local Rules, Debtor has failed to file a 1007 Affidavit. This constitutes further "cause" for dismissal.

iii.   Section 1112(b)(4)(H)

Under 11 U.S.C. § 1112(b)(4)(H) of the Bankruptcy Code, the failure to timely "provide information or attend meetings reasonably requested by the United States Trustee," also establishes "cause" for conversion or dismissal.  11 U.S.C. § 1112(b)(4)(H).  Movant has notified Debtor on multiple occasions that documents needed to administer the bankruptcy were either missing or incomplete and insufficient.  Since filing for Chapter 11 protection, Debtor has ignored a slew of reasonable requests from Movant regarding the 1007 Affidavit, proof of insurance, the attorney retention application, and the attorney disclosure statement.

As noted *supra,* Sec. II, on July 9, 2025, Movant attempted to schedule an IDI for July 30, 2025.  [Motion, p. 3].  Movant also provided a deadline of July 25, 2025 for the IDI documents. [*Id*.].  The requested IDI documents included proof of insurance. [*Id*.].  Movant sent a second email to Debtor on July 10, 2025, and provided Debtor with the United States Trustee's Operating Guidelines and Reporting Requirements for Debtor in Possession and Trustees (the "**Operating Guidelines**").[8]  [*Id*.].  On August 12, 2025, over two weeks after the original July 25, 2025 production deadline, Movant received certain IDI documents from Debtor; however, the IDI documents were "defective and/or unresponsive."   [Motion, p. 3].   Under the Operating Guidelines, debtors are required, for instance, to provide proof of insurance within fifteen days of filing the petition.[9]  Indeed, it took Debtor forty-one days to provide any IDI documents to Movant. [Motion, p. 3].  Even then, the proof of insurance that was submitted to Movant was insufficient. [Motion, p. 8].

---

[8] *See* Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, U.S. Department of Justice Office of the United States Trustee, https://www.justice.gov/ust-regionsr02/region-2-general-information. (November 13, 2025).
[9] *Id*.

Despite alerts and requests in hearings, emails, and the Motion, Debtor has failed to provide requisite insurance information and failed to provide a 1007 Affidavit. These deficiencies have caused multiple delays of the 341 meeting, which is a mandatory component of the bankruptcy proceeding. *See* 11 U.S.C. § 341. Debtor has had months to at least fix the insurance issues and 1007 affidavit issues, but has failed to provide information that has been reasonably requested by Movant. Debtor's failure to provide the aforementioned documents constitutes "cause" under section 1112(b)(4)(H). *In re Spencerport Dev., LLC*, Case No. 14-21154 (RPW), 2014 WL 6886637 at *3 (Bankr. W.D.N.Y. Dec. 4, 2014) ("Debtor's failure to comply with reasonable demands from the UST for information constitutes further 'cause' to convert or dismiss this case pursuant to 11 U.S.C. § 1112(b)(4)(H).").

    iv.   <u>Other Factors</u>

Beyond the sixteen factors listed in Section 1112(b)(4), the Court may consider other factors that may establish "cause." *See C-TC 9th Ave. P'ship*, 113 F.3d at 1311. While the Movant has already established sufficient grounds for "cause" for conversion or dismissal, the Court will also briefly review the arguments made in the Providence Joinder and Providence's Sur-Reply.

In the Providence Joinder, Providence "joins in the Dismissal Motion in all respects and submits that as between dismissal and conversion, dismissal is appropriate here." [Providence Joinder, p. 1]. Providence also raises their own independent reasons for dismissal. Providence asserts that this bankruptcy is "a sham Chapter 11 filing designed solely to pursue vexatious litigation against a lender who properly conducted a foreclosure sale against a non-debtor entity." [*Id.*, p. 2]. In Providence's Sur-Reply, Providence expands on the accusations of a "sham" filing and raises issues concerning the transfer of the underlying Idaho property and potentially "suspect" signature lines on documents. [Providence's Sur-Reply, p. 5].

Providence first raises concerns regarding the Asset Buyer and Assignment Agreement (the "**Agreement**") submitted to Movant by Debtor.  [Movant's Reply, Ex. A].  The Agreement was submitted to Movant on September 19, 2025, after numerous requests from Movant.  [Movant's Reply, p. 6].  The Agreement purports to evidence the assignment of assets by Debtor's related entities to Debtor.  [Movant's Reply, p. 6].  However, Providence claims the Agreement is an "unreliable document, with 'stamp properties' of the signature block indicating that it was signed at 11:49:37 p.m. on September 18" (the night before its submission, and more than two months after this bankruptcy filing), and that even if the document were "capable of a prepetition authentication, [it] would be insufficient to establish that the Debtor assumed those liabilities upon which it claims a bankruptcy purpose."  [Providence's Sur-Reply, p. 2].  Providence states the Agreement was "never-before-seen," despite the onslaught of requests from Movant for months.  [*Id*., p. 4].  Further, Providence points out that the Agreement was attached without any declaration or affidavit as to its authenticity.  [*Id*.].

Similar concerns were raised in Movant's Reply.  [Movant's Reply, p. 6].  Movant noted another particular oddity—every "signed document submitted by the Debtor in this case either has a wet signature or an electronic signature," but the Agreement has neither.  [*Id*.].  Movant went on to state:

> the signature block should state who signed the Agreement and in what capacity—but it does not. If UFP Holding, Inc. is the seller, and UFP Holding 1, LLC is the buyer, as the Agreement purports to state, then the Agreement should have been signed by Muhmmad Howard as the buyer and seller because Mr. Howard is the 100% owner of UFP Holding, Inc. (per testimony at the 341 meeting), and the purported authorized party to act on behalf of the Debtor (see ECF No. 46, Amended Corporate Resolution). Not only are the signatures inconsistent with Mr. Howard's signatures in this case, as stated above, it is unclear if Mr. Howard is even the appropriate party to execute documents on behalf of Debtor.[10]

---

[10] Movant's Reply, p. 6-7

These issues regarding the Agreement and signature block stamp properties raise additional potential grounds for "cause." Because the Agreement was filed with the Court on September 19, 2025, these issues were first raised in Movant's Reply and Providence's Sur-Reply, and thus Debtor has not yet been required to respond to claims regarding the Agreement (although Debtor has failed to request an opportunity to respond). However, the Court does not need to decide these issues (and an evidentiary hearing would likely be required) since sufficient grounds have already been established for "cause."

Accordingly, under the various factors enumerated in 11 U.S.C. § 1112(b)(4) and discussed above, the Court finds that "cause" exists to warrant conversion or dismissal.

## B.  DISMISSAL OR CONVERSION

Under Section 1112(b), once "cause" is established, the Court shall either convert or dismiss the case depending on the "best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).[11]

### i.  Dismissal is in the Best Interests of Creditors

Movant and Providence have both requested dismissal of Debtor's Chapter 11 case. Movant requests dismissal based on the continued "incomplete and misleading information" provided by Debtor. [Motion, p. 11]. Movant explains that "given the failure to file its required documents," including a 1007 Affidavit, it is "unlikely that the Debtor will file [the] confirmable

---

[11] Section 1112(b)(2) provides that a court "may not convert a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(2). Further, for this caveat under Section 1112(b)(2) to apply, the debtor must also either establish (1) that there is a likelihood a plan will be confirmed or (2) present a reasonable justification for the act or omission that established cause and cure the act or omission within a reasonable period of time fixed by the Court. *Id.* "The Code does not define unusual circumstances; however, courts have determined that it contemplates conditions that are not common in most chapter 11 cases." *Van Eck*, 425 B.R. at 63. Ultimately, even if Debtor could prove that unusual circumstances exist (which does not appear to be the case), the Court finds that (1) a case with numerous missing basic documents is unlikely to be confirmed and (2) no reasonable justification exists for the repeated and unexcused failure to provide the required documents.

plan." [*Id*.]. Movant also notes that throughout the duration of the case, Debtor has appeared to have been "more concerned with its discovery dispute than prosecuting its bankruptcy case." [*Id*.]. Providence supports dismissal based on Debtor's lack of adequate filings and lack of a reasonable likelihood that a plan will be confirmed. [Providence's Sur-Reply, p. 8].

In addition, the Court noted above potential issues regarding the Agreement submitted by Debtor and issues related to the purported transfer. The Court agrees with Movant that issues of this nature may best be addressed in state court "to determine if there was an orderly transfer of ownership while avoiding the unnecessary costs of a bankruptcy proceeding." [*Id*., p. 9]. Under the facts and circumstances, this bankruptcy proceeding appears to be a two-party dispute. Creditors appear to have the opportunity to seek relief in other forums and do not appear to be prejudiced by dismissal. To the extent Debtor or "its nondebtor related entities have concerns about the foreclosure sale," state law remedies serve as a viable option. [Movant's Reply, p. 8].

The Court also agrees with Movant that because there appears to be "issues concerning the Debtor's prosecution of its bankruptcy case, the disclosure of various information, the formation of the Debtor, as well as the purported transfer of assets to it by a nondebtor entity," it is unclear to the Court whether Debtor has necessary assets for a Chapter 7 Trustee to administer. [Movant's Reply, p. 10].

Finally, "once cause for relief is shown, the Court has broad discretion to either convert or dismiss the chapter 11 case." *AdBrite*, 290 B.R. at 215 (citing *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986)).

For these reasons, the Court finds that it is in the best interest of the creditors and the bankruptcy estate to dismiss Debtor's Chapter 11 case.

      ii.    <u>Dismissal is potentially warranted under 11 U.S.C. 305(a)(1)</u>

Movant also asserts that dismissal is warranted under 11 U.S.C. § 305(a)(1).  [Movant's Reply, p. 7].  Section 305(a)(1) allows the Court to dismiss a case at any time if it is "in the best interests of creditors and the debtor would be better served by such dismissal or suspension."  11 U.S.C. § 305(a)(1).  Movant points out that, while relief under Section 305(a)(1) is more commonly sought in involuntary chapter 11 cases, "nowhere in the text of § 305(a)(1) or in its legislative history did Congress specifically limit the basis for a § 305(a)(1) motion to involuntary cases commenced by creditors to gain leverage in out-of-court negotiations."  [Movant's Reply, p. 7] (quoting *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 463-64 (Bankr. S.D.N.Y. 2008)).  This provision, often referred to as "abstention," grants the Court broad discretion to abstain from and dismiss any bankruptcy case even where jurisdiction may be properly conferred.  *See In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013) ("The decision to abstain under § 305(a)(1) should be made on a case-by-case basis.") (citing *Monitor Single Lift I, Ltd.*, 381 B.R. at 464-465).

Courts focus on seven factors when rendering a decision under Section 305(a)(1):

    (1) the economy and efficiency of administration;

    (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;

    (3) whether federal proceedings are necessary to reach a just and equitable solution;

    (4) whether there is an alternative means of achieving an equitable distribution of assets;

    (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

*Monitor Single Lift I, Ltd.* 381 B.R. at 464-65; *see also In re Genger*, Case No. 19-13895 (JLG), 2023 WL 4311219 (Bankr. S.D.N.Y. June 30, 2023); *In re Wyth Berry Fee Owner LLC*, Case No. 22-11340 (MG), 2023 WL 1786407 (Bankr. S.D.N.Y. Feb 6, 2023); *In re Navient Sols., LLC*, 625 B.R. (Bankr. S.D.N.Y. 2021).

Although the Court has already determined that dismissal is in the best interest of creditors and the bankruptcy estate under Section 1112(b)(1), the Court finds that dismissal is likely appropriate under Section 305(a)(1) as well, based largely on the same analysis.

## V.    CONCLUSION

In conclusion, for the reasons set forth above, the Motion [Dkt. No. 25] is **GRANTED** and this case is **DISMISSED**.

It is **SO ORDERED**.

Dated: New York, New York
      November 25, 2025           /S/ John P. Mastando III_____
                                   HONORABLE JOHN P. MASTANDO III
                                   UNITED STATES BANKRUPTCY JUDGE